Williams, J.
In May, 1893, a co-partnership owning a plant, in the city of Columbus, equipped for the manufacture and sale of oleomargarine, was engaged in carrying hat business under the firm name of The Capital City Dairy Company, and then had an established trade. At that time, The Central Ohio Natural Gas and Fuel Company, a corporation organized under the laws of this state for’ the purpose of furnishing and selling natural gas to the inhabitants of the city, was prosecuting its business of supplying gas through pipes, some of which were laid in close proximity to the manufactory of the co-partnership. That property and its contents were damaged by an explosion of the gas, occasioned by the negligence of the corporation, for which it was liable to the co-partnership. Shortly afterward, in July,- 1893, the property and business of the co-partnership, with its accounts and bills receivable, including its demand for the damages resulting’ from the explosion, were sold and transferred to a corporation organized in this state by the members of the co-partnership and some other persons. This corporation was formed for the purpose of continuing the business of the co-partnership, adopted its name, and thereafter carried on the business at the same place; and, in September, 1893, it commenced the action below against the plaintiff in error to recover the damages resulting from the gas explosion, the de *103 mand for which, it was alleged had been sold and assigned to the plaintiff as already stated. Issue was joined by denial of the alleged transfer of the demand, as well as of the allegations of the defendant’s negligence; and the cause was submitted to the court upon the evidence and the .following-agreement of the parties: “It is stipulated and agreed by and between the parties hereto that the amount of damages caused by the explosion set out in plaintiff’s second amended petition herein was, as of the date of that explosion, the sum of $800.00; and that said damages were caused by the explosion of natural gas in the pipes of, and belonging to defendant, and was caused solely by defendant’s negligence. It is further stipulated and agreed by and between the parties that, as to all other questions in issue between the plaintiff and defendant, a jury may be, and it is hereby waived, and said issues may be tried by the Court. ’ ’
This agreement left no issue of fact for trial except that relating to the alleged transfer of the cause of action to the plaintiff, which the court found in favor of the plaintiff, and rendered judgment accordingly. The judgment was affirmed by the circuit court. The legal question to which our attention is directed concerns the corporate capacity of the plaintiff to acquire the demand sued on, and enforce it by action against the defendant. The plaintiff corporation was formed, as.declared in its articles of incorporation, “for the purpose of manufacturing, selling and dealing in oleomargarine and the materials and utensils employed in the manufacture, storage and transportation thereof, and all things incident thereto.” And the contention is, that the purchase of a chose in action, especially one founded on negligence or other tort, is *104 so foreign to the objects of the incorporation of the plaintiff that it could acquire no title thereto, and, consequently, was without authority to prosecute the action below.
It is a general rule, as sound as it is well settled, that corporations, in addition to the powers expressly granted, have by necessary implication, the power to do whatever is needed to carry into effect those granted, and accomplish the purposes of its. creation, unless the particular act is forbidden by the law or charter. This is, in substance, the statutory rule of Ohio corporations. Revised Statutes, section 3239. And, it should be reasonably applied, with a view of promoting the legitimate objects of the corporation, rather than with a strictness that would so hedge it about as to obstruct the practical attainment of the corporate purposes, or embarrass the corporate business. These implied powers which a corporation has in order to carry into effect its legitimate purposes are not limited to suchas are indispensable to their accomplishment, but comprise all those powers that are necessary in the sense of appropriate, convenient and suitable, including a right of reasonable choice of means to be employed; and whether an act comes within those powers, must be determined in each case from all its facts and circumstances. Acts which, if standing alone, or when engaged in as a business, would be beyond the powers of the corporation, are not necessarily ultra vires, when they are merely incidental to, or form part of an entire transaction that, in its general scope, is within the corporate purpose. For instance, a railroad corporation has power to acquire and hold real property for its right of way, and other uses necessary in the operation of its road, *105 but is without corporate power to purchase or hold such property for sale or rent; and yet, if, in locating its roadway, it should be deemed expedient to run it across an improved lot, the damages to which would be enhanced on account of buildings and other improvements upon it, and to avoid the expense and uncertainty of an assessment of damages by a jury the company should purchase the entire property, parts of which, including the buildings, would not be needed for any railroad purpose, it could hardly be claimed the corporation so exceeded its powers that it acquired no title to, or might not thereafter sell or lease that part of the premises not actually needed for corporate purposes. So, if a corporation formed for the purpose of manufacturing and dealing in a particular line of goods, in order to obtain from an existing partnership engaged in a similar business, an established and going concern with its good will, should in good faith buy out its whole plant, including some articles not pertaining to the objects of the corporation, instead of incurring the delay of constructing a new plant and the expenses that usually attend the building up of an independent trade, there would seem to be no good reason for declaring the purchase void, so as to deprive the corporation of the title to the property, even of those articles nob strictly necessary in its business. The corporate objects might be materially promoted by such transaction as an entirety, and the power to make a reasonable choice of means to accomplish that end, properly belongs to the corporate body. The transformation of partnerships into corporations by this method is not uncommon. In Thompson on Corporations, section 1645, that author says: ‘ ‘ The ordinary way of reorganizing a partnership in *106 the form of a corporation is to organize the corporation in form, whereupon the partners make a formal deed of the partnership property to the corporation, in exchange for its shares, which are distributed among them according to their respective holdings in the partnership. That assets of the partnership of all kinds may be thus turned in to the corporation in payment of its shares, where the corporation is capable of engaging in the business of the partnership, and is not disabled from holding the property which the partners may own, is a proposition which has the sanction of everyday experience,to say the least.” And see Francklyn v. Sprague, 121 U. S., 215.
The validity of transactions like these is to be determined from their general character considered as a whole, rather than by seggregation into individual parts and each regarded as distinct from the others; though, undoubtedly, a corporation would not be sustained in uniting a legitimate corporate act with one forbidden or unauthorized, for the purpose merely of enabling it to accomplish the latter.
The proper application of the doctrine of ultra vires depends largely on the relation of the parties to the litigation. When the action of a corporation is challenged by the sovereignty which gave it existence, or by whose favor it is permitted to pursue its business, it may be required to show a clear warrant for the acts so called in question; while in suits between individuals and corporations, or between corporate bodies, where private rights only are involved, the rule is not inflexible, and yields to considerations of right and justice. In suits of that kind, it is maintained by the highest authority, that the title of a corporation to real *107 or personal property cannot be assailed, nor its enjoyment defeated, on the ground that its acquisition was in excess of the corporate power, or in a mode not conformable thereto. This is held in Bank v. Matthews, 98 U. S., 621-628, where it is said by Mr. Justice Swayne that: “"Where a corporation is incompetent to take title to real estate, a conveyance to it is not void, but only voidable, and the sovereign alone can object. It is valid until assailed in a direct proceeding instituted for that purpose.” This principle is approved and applied in a number of cases subsequently decided by the same court, among them Cowell v. Springs Co., 100 U. S., 55; Reynolds v. Bank, 112 U. S., 405; Fortier v. Bank, ib., 439; Fritts v. Palmer, 132 U. S., 282. And the same principle was Recognized and enforced in Ehrman v. Ins. Co., 35 Ohio St., 324, as far as was necessary in the decision of that case. It was there held that the title of a corporation to a chose in action which it had purchased from another corporation could not be controverted by the debtor on the ground that the purchase was made in a mode or for a purpose not authorized; and a judgment in favor of the purchasing corporation against the debtor was sustained. The debtor, it was said, was a stranger to the transaction by which the chose in action was purchased, was not injured by the transfer, and had no right to question its validity.
In this case, the plaintiff virtually became the successor of the partnership by the purchase of all its assets and continuing the same business at the same place and in the same name. The primary object of the purchase was to obtain an equipped and going manufacturing establishment, and the transfer was completed under one entire *108 contract in which was included the claim in suit for damages which the property had recently sustained. No party to that agreement questions the plaintiff’s title, and the defendant was neither injured by, nor interested in the transaction. On the trial the liability of the defendant was admitted, and the parties agreed on the amount of the damages. Either the plaintiff or the co-partnership is entitled to the money, and as the latter in no way disputes the right of the plaintiff to it, we see no good reason for disturbing the judgments which the courts below have rendered.

■Judgment affirmed.