ALFRED MILLARD, TRUSTEE, ET AL., APPELLANTS, V. BERTHA WEGNER ET AL., APPELLEES.

FILED APRIL 22, 1903. No. 11,837.

1. **Unrecorded Contract:** NOTICE: SUBSEQUENT INCUMBRANCER. Inclosing an eighty-acre tract with other land, with a post and wire fence, and using the same for pasturing cattle, is sufficient notice of the rights of a purchaser who holds it by an unrecorded contract to put a subsequent incumbrancer on inquiry as to the purchaser's rights.

2. **Evidence.** Evidence examined, and *held* sufficient to sustain the findings and judgment of the trial court.

APPEAL from the district court for Merrick county: JAMES A. GRIMISON, DISTRICT JUDGE. *Affirmed.*

*Arthur C. Wakeley* and *William T. Thompson,* for appellant.

*George W. Ayres* and *J. W. Sparks, contra.*

SEDGWICK, J.

This action was begun in the district court for Merrick county by the plaintiffs, Alfred Millard *et al.,* to foreclose a mortgage upon eighty acres of land. The trial resulted in findings and decree in favor of the defendant Bertha Wegner, from which the plaintiffs have appealed to this court. July 10, 1883, one Taylor, who was then the owner of this land, conveyed it by mortgage, together with another tract of 120 acres in the same township, and other lands, to the Omaha Savings Bank, to secure the payment of a note for $15,000. This mortgage was immediately placed upon record. In September, 1886, Taylor contracted to sell eighty acres in question to the defendant's

husband, who then paid a part of the purchase price. It does not appear whether the contract was oral or in writing. Prior to 1891 and during that year, Taylor paid the said note, principal and interest, except $900 and the land embraced in the said mortgage, except the two tracts above named, was released therefrom. In August, 1891, Taylor mortgaged the 120-acre tract of land to the Commercial National Bank to secure the payment of $3,540.35. This mortgage was subject to the first mortgage above described, and was recorded on the 5th day of September, 1891, but the deed to the 80-acre tract to this defendant was not recorded until March 9, 1898. The first mortgage was sold and assigned to one Davis, and by her afterwards, on the 24th day of December, 1898, to the plaintiff Alfred Millard, as trustee for the Commercial National Bank. On August 31, 1901, payments having been made on the second mortgage, and there being still due the sum of $1,895, the Commercial National Bank bought Taylor's equity in the 120-acre tract of land, released its mortgage thereon, and sold the land and applied the proceeds of the sale upon the second mortgage. Upon these facts the defendant insists that the proceeds of the sale of the 120-acre tract should have been applied upon the first mortgage, thus releasing her land from the lien of that mortgage. This contention appears to depend upon the question of notice to the savings bank, at the time it took the second mortgage, of the rights of the defendant in the 80-acre tract. If Taylor, at the time of giving that mortgage, had been the owner of the 80-acre tract, the holder of the first mortgage, having two funds from which to pay the same, would not be allowed to exhaust the security of the second mortgage without applying upon his claim the other fund upon which he had security. Since Taylor appeared by the record to be the owner of the 80-acre tract, the Commercial National Bank, in taking the second mortgage, might rely upon this principle of the law to protect its securities, unless it had notice, either actual or constructive, of the defendant's interest in the land when its mortgage was taken. It

no doubt might purchase the first mortgage and make disposition of the securities therein in protecting its second mortgage, as the law would have required the first mortgagee to do. If, however, it took its second mortgage with notice of the defendant's interest in the land, it would have taken no greater equity against the defendant than Taylor himself had, and Taylor had agreed that defendant should have full title to the 80-acre tract. It is conceded that the bank, at the time of taking this second mortgage, had no actual notice of the rights of defendant and her husband therein, and it is insisted that the defendant and her husband did not take such exclusive and notorious possession of the land as to constitute notice to innocent purchasers thereof.

"The doctrine seems quite firmly established, by successive judicial decisions, both in this country and in England, that open, notorious and exclusive possession of real estate, under an apparent claim of ownership, is notice to those who subsequently deal with the title, of whatever interest the one in possession has in the fee; whether such interest be legal or equitable in its nature." Wade, Law of Notice, sec. 273. The same authority shows (section 274) that the supreme court of Massachusetts, in construing a peculiar statute, has adopted a different rule, but the courts of the states of Missouri and Maine, having a similar statute, have refused to follow the construction placed upon it by the courts of Massachusetts. Section 277.

Mr. Wegner took possession of the land at the time of making his contract with Taylor, and began to inclose it, but soon after died, and the defendant succeeded to his right in the land. She completed the inclosure of the land, together with another tract adjoining it, with a post and two-wire fence. The tract in question was wild land; no other improvements were made thereon. The defendant used the land to pasture cattle during the summer, and at times during the winter kept her horses thereon. This was the condition of the possession at the time that the second mortgage in question was given by Taylor. The defendant

afterwards paid the balance of the purchase price in full, which appears to have been the full value of the land, and Taylor and wife conveyed the land to her in pursuance-of the contract.

In *Truesdale v. Ford,* 37 Ill. 210, 215, a case relied upon to sustain appellants' argument, the court said that the question was whether the possession "was so open, visible, notorious and exclusive as to be calculated in its very nature, to inform persons in the vicinity, and those seeing the property, that some person had appropriated it, and was using and occupying it for his own use."

Clearly, to fence it with a substantial fence, including the piece of land with another piece not owned by the grantor, would be sufficient to inform persons in its vicinity that some one had appropriated it.

In *Williams v. Sprigg,* 6 Ohio St. 585, another case relied upon to sustain the position of appellants, the complainant bought a vacant lot adjoining his hotel property. He removed some lumber and rubbish therefrom, which had accumulated during the building of the hotel. The court said (p. 594):

"He does not build upon it; he does not fence it; but his tenant of the other lots and hotel, hangs out clothes there to dry after being washed. This is the extent of the possession held and exercised by complainant." And, further, the court said: "Living on the premises, raising crops on them, the employment of persons there in the making of improvements, accompanied by frequent acts and expressions of ownership, would produce such notoriety, undoubtedly, as should put purchasers upon their guard, and induce investigation to acquire knowledge sufficient to enable them to deal safely." But no one of these things specified by the Ohio court, and perhaps not even all of them, would be a more definite act of ownership and exclusion than to inclose the land with other land, as was done in this case, with a substantial fence. There can be no doubt that such an act was an act of one who claimed an interest in the property, and must certainly be sufficient

41

to "produce such notoriety as should put purchasers upon their guard." That the act of surrounding a piece of land with a substantial fence is notice that the party so doing claims an interest in the land, and is sufficient to put purchasers upon inquiry as to who has asserted such an act of ownership, seems so self-evident as not to admit of argument.

The defendant's possession of the land was exclusive and notorious, and was clearly sufficient to put a purchaser upon inquiry as to her rights therein.

The judgment of the district court is

AFFIRMED.