(57 App. Div. 476.)

UIHLEIN et al. v. MATTHEWS.

(Supreme Court, Appellate Division, Fourth Department. January 29, 1901.)

1. COVENANTS RUNNING WITH LAND—RESTRICTION OF USE—INTOXICATING LIQUORS.

An agreement, duly recorded, by the purchaser of land adjoining plaintiffs' and of an interest in the dividing wall, to the effect that the purchaser would not allow the premises to be used as a place in which to sell liquors for a period of five years, and that the agreement should operate as a covenant running with the land, was valid.

2. SAME—DEEDS—CONSTRUCTION—INTENTION.

Vendor conveyed a strip of land off one side of his lot to the adjoining owner, and also sold an interest in a dividing wall in consideration of an agreement that the purchaser would not allow the premises to be used for the sale of liquor for a period of five years, and reserving to the vendor a right of way between the premises. Subsequently it was discovered that there remained a strip between the two premises which was not included in the vendee's deed, and for a consideration the vendor quitclaimed the entire premises occupied by vendee, including the two strips and the interest in the wall, and still reserving the right of way, but not stipulating as to the use of the premises. At the same time the parties entered into a written contract concerning the premises, based on their prior agreement. Held, that the covenant concerning the use of the premises for sale of liquors was not destroyed by the quitclaim deed, as the acts of the parties showed no intention to destroy it.

Appeal from special term, Monroe county.

Proceedings by August Uihlein and another against Margaret Matthews and others to restrain defendants from selling intoxicating liquors on premises owned by them. From a decree in plaintiffs' favor, defendant Matthews appeals. Affirmed.

In May, 1898, the plaintiff McManus owned a brick building fronting on West avenue, in the city of Rochester, and occupied by him as a saloon and restaurant. The defendant Margaret Matthews owned the premises adjoining him on the east, which consisted of a vacant lot 14 feet in width. She desired to erect a brick building on her lot, and on May 4, 1898, entered into a written agreement with the plaintiff McManus, duly acknowledged and recorded, whereby McManus conveyed to her three inches of land east of the east wall of his building, and also the use of his said wall as a party wall, and said Mrs. Matthews covenanted and agreed, in consideration thereof, that "she would not use or allow her said building to be used or occupied for a period of five years from the date of this instrument as a place for the sale of ales, beer, wines, or liquors." The agreement contained other provisions, including a right of way to McManus along the west side of the premises of said defendant, also for the period of five years, but said provisions are not in controversy in this action. The agreement further provided that its covenants and stipulations should operate "as covenants running with the land." In the year 1898, Mrs. Matthews erected her building, making use of the east wall of said plaintiff, as provided in the agreement. After its construction she applied for a loan, and it developed that a strip of land 2½ feet wide, adjacent to the party wall, was not included in her deed. McManus made no claim to this land, but after considerable negotiation, and after an action had been brought to determine the ownership thereof, McManus, for a consideration paid him, executed and delivered a quitclaim deed to Mrs. Matthews, which covered not only the strip of land in question, but the entire tract confessedly owned by her, and also the lot adjoining it on the east, and to which neither of the parties had any title. The deed reserved to the grantor the right of way which extended along this strip, and also the opening in the walls, both of which had been provided for in the agreement referred to. There was no mention in the deed as to the use of the premises for the

sale of liquor, nor was the subject alluded to during the negotiations, except that McManus testified that he was assured that by giving the quitclaim deed he would not part with any of his rights. At the time of the delivery of the deed a separate agreement was entered into between the parties explanatory of the clause of the agreement of May 4, 1898, which provided for the extension of the west wall of the defendants' building to the street line. In January, 1899, McManus sold and conveyed his premises to the plaintiff Uihlein, and at the same time leased of his grantee, and is now using the same for a saloon and restaurant. On July 1, 1899, the defendants O'Hara and Murphy leased of Mrs. Matthews her premises, with knowledge of the covenant in the agreement with McManus by which she agreed not to use said building for the sale of intoxicating liquors. The building was leased specially for the sale of liquors, and the tenants carried on that traffic until restrained by a temporary injunction granted in this action, which was commenced in August, 1899. Mrs. Matthews alone appeals.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

George E. Milliman, for appellant.
H. M. Hill and Scott Cummings, for respondents.

SPRING, J. The restriction in the deed that the premises of the appellant should not be used for the sale of intoxicating liquors was a valid condition, running with the land. Plumb v. Tubbs, 41 N. Y. 442. Whether that covenant was destroyed by the subsequent quitclaim deed depends upon the intention of the parties at the time the deed was delivered. That intention is to be gathered from the instruments themselves, and from all the circumstances and facts surrounding their execution. The quitclaim deed was delivered at the solicitation of Mrs. Matthews. It was for the particular purpose of clearing up the title to the narrow strip 2½ feet in width. McManus was not asserting title to this strip. He was effectually estopped by the agreement of May 4, 1898, from claiming ownership to it. That agreement was based upon mutual covenants, and it made the brick wall upon his premises a party wall, and assured to him a right of way along this strip in controversy, and on the assumption that title to it was in Mrs. Matthews. These facts are incompatible with any claim by him to this property adverse to Mrs. Matthews. If he managed to extort money from her as a consideration for the quitclaim deed, it was not for the reason that he was parting with any right in the land, but because in her stress she needed the deed to secure her loan. That the parties did not intend their rights were to be construed solely by the deed is obvious from the fact that contemporaneously with that conveyance they entered into a written agreement which reaffirmed their prior contract, and explained what the intention was as to the extension of the west wall of the Matthews building. This is a cogent circumstance, indicating that the parties regarded the agreement as still in force, and not annulled by the subsequent deed. It is not an independent agreement, but a distinct adoption of the first contract. It would have been very easy for the parties to make the latter agreement a substitute for the preceding one, and in unequivocal terms to provide for its revocation. They abstained from doing this, and apparently were careful to recognize that agreement, and there is no suggestion in the oral proof that it

was to be superseded by the deed. In view of these circumstances, it seems clear that the intention of the parties was to keep in life this first contract.

The reservation of the right of way in the quitclaim deed was proper, because that easement passed along the very piece of land which induced the deed, and that reservation in the deed, therefore, does not militate against the contention that the parties expected their original agreement was still operative. The undisputed evidence shows, and the trial court has found, that the tenants of Mrs. Matthews leased with full knowledge of the covenant in the first agreement precluding her from selling intoxicating liquors on her premises. They, therefore, took title for the purpose of operating a liquor saloon, at their peril. Hodge v. Sloan, 107 N. Y. 144, 17 N. E. 335; Rowland v. Miller, 139 N. Y. 93, 34 N. E. 765, 22 L. R. A. 182.

The judgment should be affirmed, with costs to the respondents. Judgment affirmed. All concur, except McLENNAN, J., not voting.